UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ANGELICA LOPEZ-MEJIA *ex rel.*, | : | Case No. 1:16-cv-549 |
| UNBORN CHILD, | : | |
| | : | Judge Timothy S. Black |
| Petitioner, | : | |
| vs. | : | |
| | : | |
| LORETTA E. LYNCH, *et al*., | : | |
| | : | |
| Respondents. | : | |

**ORDER DENYING PETITIONER'S MOTION
FOR A TEMPORARY RESTRAINING ORDER (Doc. 2)**

This civil case is currently before the Court on Petitioner's Motion for a

Temporary Restraining Order.  (Doc. 2).  Following an informal conference with the

Court pursuant to S.D. Ohio Civ. R. 65.1, Petitioner filed a supplemental memorandum

(Doc. 4).[1]  On May 18, 2016, the Court heard oral argument on the motion.

## I.    BACKGROUND FACTS

At issue in this case is whether summary removal of an illegal alien violates the

constitutional rights of his unborn child who is due to be born on or about July 30, 2016

at University Hospital in Cincinnati, Ohio.

Petitioner's father, Juan De Leon Simon, is currently in the custody of the

Department of Homeland Security and will be removed on or around May 19, 2016 from

---

[1] Respondents rely on their oral argument and written argument in *Saldana ex rel. BNS v. Holder, et al.*, Case No. 3:15cv105 (S.D. Ohio 2015) at Doc. 8.

the United States pursuant to an Order of the Immigration Court.  Mr. Simon is a citizen

of Guatemala and claims that if he returns, he faces death due to political conflict.[2]

Petitioner seeks a declaratory judgment that the federal statutes setting forth the

summary removal procedures for undocumented immigrants, *i.e.*, 8 U.S.C. Sections

1182, 1225(b)(1)(A), 1227(a)(1)(B), 1228, 1231, 1326, are unconstitutional as applied to

this case.  Specifically, Petitioner alleges violations of the Due Process Clause and the

Equal Protection Clause and the Eighth, Ninth, and Tenth Amendments.[3]

## II.  STANDARD OF REVIEW

"The Sixth Circuit has explained that 'the purpose of a TRO under Rule 65 is to

preserve the status quo so that a reasoned resolution of a dispute may be had.'" *Reid v.*

*Hood*, No. 1:10 CV 2842, 2011 U.S. Dist. LEXIS 7631, at *2 (N.D. Ohio Jan. 26, 2011)

(citing *Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 227 (6th Cir. 1996)).

"The standard for issuing a temporary restraining order is logically the same as for a

preliminary injunction with emphasis, however, on irreparable harm given that the

purpose of a temporary restraining order is to maintain the status quo." *Id.* (citing *Motor*

*Vehicle Bd. of Calif. v. Fox*, 434 U.S. 1345, 1347 n.2 (1977)).

---

[2] The Complaint fails to provide details about Mr. Simon's situation, but presumably he had a Merits Hearing where he was given the opportunity to present defenses to his removal, such as political asylum and the impending birth of his child.  At the Merits Hearing, Mr. Simon would have had the opportunity to bring witnesses to testify on his behalf regarding, among other things, the well-being of his unborn child.  *See* 8 U.S.C. § 1229a(b)(1).

[3] Counsel for Petitioner previously conceded that there is no private right of action under the Tenth Amendment which simply provides that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."  U.S. Const, Amend. X.  *See also Saldana v. Holder*, No. 3:15cv105, 2015 U.S. Dist. LEXIS 44023, at *5-6 n. 2 (S.D. Ohio Apr. 2, 2015).  Accordingly, Petitioner fails to state a claim for violation of the Tenth Amendment.

Petitioner bears the heavy burden of demonstrating his entitlement to a preliminary injunction.  An "injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it."  *Overstreet v. Lexington-Fayette Urban County Gov't,* 305 F.3d 566, 573 (6th Cir. 2002).

In determining whether to grant injunctive relief, this Court must weigh four factors: (1) whether the moving party has shown a strong likelihood of success on the merits; (2) whether the moving party will suffer irreparable harm if the injunction is not issued; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuing the injunction.  *Id.* These four considerations are factors to be balanced, not prerequisites that must be met. *McPherson v. Michigan High Sch. Athletic Ass'n, Inc*., 119 F.3d 453, 459 (6th Cir. 1997). "Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal."  *Gonzales v. Nat'l Bd. of Med. Exam'rs,* 225 F.3d 620, 625 (6th Cir. 2000).

### III.   ANALYSIS

The Court finds categorically that Petitioner has not evidenced facts sufficient to warrant a temporary restraining order.[4]

### A.   Likelihood of Success on the Merits

Petitioner alleges that the removal procedures are unconstitutional.

---

[4] As a threshold issue, it is not even clear that an unborn child has standing to proceed in this case.  Neither party cited any law addressing the issue.

### 1.    *Eighth Amendment*

First, Petitioner alleges that Mr. Simon's removal constitutes a form of cruel and unusual punishment for the unborn child.  However, the cruel and unusual punishment clause of the Eighth Amendment provides protection only to persons convicted of a crime.  *Whitley v. Albers*, 475 U.S. 312, 318 (1986).  Since the unborn child has not been convicted of a crime, his/her Eighth Amendment rights are not implicated.  Moreover, the Eighth Amendment prohibition against cruel and unusual punishment does not apply to removal proceedings, because "deportation does not constitute punishment."  *Elia v. Gonzales*, 431 F.3d 268, 276 (6th Cir. 2005).

### 2.    *Ninth Amendment*

Next, Petitioner alleges a violation of Ninth Amendment rights.  The Ninth Amendment provides that "[t]he enumeration in the Constitution of certain rights, shall not be construed to deny or disparage others retained by the people."  U.S. Const. Amend. IX.  This amendment "does not confer substantive rights in addition to those conferred by other portions of our governing law."  *Gibson v. Matthews*, 926 F.2d 532, 537 (6th Cir. 1991).  Accordingly, Petitioner fails to allege a violation of the Ninth Amendment.[5]

---

[5] Even if the Ninth Amendment did confer substantive rights, Petitioner's claims lack merit. *See, e.g., Cervantes v. INS*, 510 F.2d 89, 91-92 (10th Cir. 1975) (the "incidental impact on aliens' minor children," caused by the operation of the deportation laws, does not violate the children's Ninth Amendment rights).

### 3.    *Substantive Due Process*

Petitioner also alleges that the deportation violates substantive due process. "Substantive due process … serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996).  The Sixth Circuit has set forth a two-part analysis for examining substantive due process claims.  *Ziss Bros. Constr. Co., Inc. v. City of Independence, Ohio*, 439 F. App'x 467, 471 (6th Cir. 2011).  Under this analysis, the Court must first "determine whether the interest at stake is a protected liberty or property interest" and then "consider whether the deprivation of that interest contravened the notions of due process." *Id.*  "Substantive due process 'prevents the government from engaging in conduct that shocks the conscience…or interferes with rights implicit in the concept of ordered liberty.'" *United States v. Green*, 654 F.3d 637, 652 (6th Cir. 2011).  Moreover, "irrespective of the constitutional sufficiency of the processes afforded, government may not deprive individuals of fundamental rights unless the action is necessary and animated by a compelling purpose." *Bartell v. Lohiser*, 215 F.3d 550, 557-58 (6th Cir. 2000).

Assuming Petitioner has a protected interest,[6] he/she does not establish that he/she was deprived of due process.

---

[6]  Petitioner argues that family integrity is a recognized liberty interest.  *O'Donnell v. Brown*, 335 F. Supp. 2d 787 (W.D. Mich, 2004) (citing *Wallis v. Spencer*, 202 F.3d 1126, 1136 (9th Cir. 2000)).  However, these cases deal with the removal of children as a result of abuse and neglect, not the removal of a parent pursuant to an Order of the Immigration Court.  Undocumented immigrants who are subject to deportation have no protected property or liberty interest in discretionary relief such as cancellation of removal.  *Martial-Emanuel v. Holder*, 523 F. App'x 345, 350 (6th Cir. 2013).

<u>First</u>, Petitioner has not pleaded sufficient facts to allege that the government engaged in conduct that "shocks the conscience."[7] While it is certainly sad and unfortunate that families are often separated as a result of deportation, it does not "shock the conscience" of the Court. In drafting immigration laws, there is no evidence that Congress intended to injure children.[8] Moreover, removal does not prohibit a child from visiting or even living with his/her parent abroad.

<u>Second</u>, the government has a compelling state interest, based on boarder security and national sovereignty, to enforce its immigration statutes. *Mathews v. Diaz,* 426 U.S. 67, 79-80 (1976). "The proposition that the government has a compelling interest in regulating its border hardly needs testimonial documentation. The Court 'has long recognized the power to expel or exclude aliens as a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control.'" *United States v. Aguilar*, 883 F.2d 662, 695 (9th Cir. 1989) (citing *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 210 (1953)).

---

[7] The United States Supreme Court has defined such behavior as "conduct intended to injure in some way unjustifiable by any government interest." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998). Conscience-shocking behavior consists of "only the most egregious and arbitrary official conduct." *Assocs. in Obstetrics & Gynecology v. Upper Merion Twp.*, 270 F. Supp. 2d 633, 654 (E.D. Pa. 2003).

[8] "[A]ny policy toward aliens is vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations, the war power, and the maintenance of a republican form of government. Such matters are so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference." *Harisiades v. Shaughnessy*, 342 U.S. 580, 588-589 (1952).

### 4.    *Equal Protection*

Finally, Petitioner alleges that summary deportation of his/her father violates the Equal Protection clause.  Petitioner references Ohio's domestic and juvenile law which applies the "best interests of the child" standard.  However, in a case involving the deportation of a parent, courts have determined that the child is only affected indirectly. *Cabrera-Alvarez v. Gonzales*, 423 F.3d 1006, 1010-11 (9th Cir. 2005).[9]  Moreover, it will very rarely be in a child's best interests to have a parent deported.  Therefore, if this standard were applied in all removal proceedings indirectly impacting a child, it would create a huge loophole in the law.[10]  *See also Lopez v. Franklin*, 427 F. Supp. 345, 349 (E.D. Mich. 1977) ("an argument could be made in every one of these cases that form an objective socio-economic perspective [,] the 'best interests of the child' would be to remain in the United States rather than return to the parents' native land.").

Courts have routinely held that Congress has the power to regulate immigration, and "[t]he incidental impact on aliens' minor children caused by the enforcement of duly-

---

[9] *See also Application of Amoury*, 307 F. Supp. 213, 216 (S.D.N.Y. 1969) (rejecting equal protection claim of child of deportable alien, finding no "invidious discrimination or arbitrary classification," and noting that "[t]he situation which confronts the infant is due to no act or conduct of the government.  It exists because of the conduct of the infant's parents which renders them deportable.  The citizen infants of other aliens remain here because their parents are not deportable.").

[10] *See, e.g., Marin-Garcia v. Holder*, 647 F.3d 666, 672-74 (7th Cir. 2011) ("If an alien could avoid the consequences of unlawful entry into the United States by having a child, it would create perverse incentives and undermine Congress's authority over immigration matters."); *Ayala-Flores v. INS*, 662 F.2d 444, 446 (6th Cir. 1981) (a finding that a parent's deportation deprives his children of their rights as U.S. citizens "would create a substantial loophole in the immigration laws, allowing all deportable aliens to remain in this country if they bear children here.").

7

enacted conditions on aliens' entrance and residence does not create constitutional problems." *Cervantes v. Immigration & Naturalization Serv.*, 510 F.2d 89, 92 (10th Cir. 1975).[11]  The implications of finding a constitutional violation would be significant.

> [D]eportations of parents are routine and do not of themselves dictate family separation.  If there were such a right, it is difficult to see why children would not also have a constitutional right to object to a parent being sent to prison or, during periods when the draft laws are in effect, to the conscription of a parent for prolonged and dangerous military service.

*Payne-Barahona v. Gonzales*, 474 F.3d 1, 3 (1st Cir. 2007).[12]

Therefore, Petitioner has not shown a likelihood of success on the merits of his/her constitutional claims.[13]

### 5.     *Saldana v. Holder*

Approximately one year ago, Judge Rice denied a factually similar motion for temporary restraining order, finding that the minor children had failed to evidence a likelihood of success on the merits.  *Saldana v. Holder*, No. 3:15cv105, 2015 U.S. Dist.

---

[11] *See also Hernandez-Lara v. Holder*, 563 F. App'x 401, 403 (6th Cir. 2014) (rejecting claim that the "exceptional and extremely unusual hardship" showing required for cancellation of removal "adversely affects only those members of the class of United States-citizen children…whose parents are subject to removal from this country," and noting that it is "well-settled" that "a United States-citizen child's constitutional rights are not implicated by the government's otherwise valid decision to deport that child's parents").

[12] In fact, it appears that every court that has addressed similar claims has found that "a parent's otherwise valid deportation does not violate a child's constitutional right."  *Payne-Barahona*, 474 F.3d at 2 n. 1 (collecting cases from numerous circuits); *Martial-Emanuel*, 523 F. App'x at 350 ("This Circuit and others have held on numerous occasions that the removal of aliens does not violate either their constitutional rights or the constitutional rights of their U.S. citizen family members.").

[13]  The Court's finding that there is no likelihood of success on the merits is fatal.  However, the Court will address the other three factors nonetheless.  *Gonzales*, 225 F.3d at 625.

LEXIS 44023, at *10 (S.D. Ohio Apr. 2, 2015). Here, Petitioner argues that the court in *Saldana* wrongly interpreted *Hamdi v. Napolitano*, 620 F.3d 615 (6th Cir. 2010).[14] Specifically, in *Hamdi*, the Sixth Circuit left open the possibility that other kinds of remedies might be available to the minor child. *Id.* at 629 n. 16. Judge Rice determined that since the district court lacked authority to review orders of removal by statute, even if it determined that the Saldana's removal violated the constitutional rights of his children, *Hamdi* did not permit the Court to enjoin his removal. *Saldana*, 2015 U.S. Dist. LEXIS 44023 at 3-4 n. 1. Petitioner argues that this reasoning essentially finds that statutory law trumps the Constitution. This Court declines to address potential remedies, because Petitioner failed in the first instance to evidence a constitutional violation.

## B. Irreparable Harm

"To demonstrate irreparable harm, the plaintiffs must show that ... they will suffer actual and imminent harm rather than harm that is speculative or unsubstantiated." *Abney v. Amgen, Inc.*, 443 F.3d 540, 552 (6th Cir. 2006). Harm is irreparable if it cannot be fully compensated by monetary damages. *Overstreet v. Lexington-Fayette Urban County Gov't.*, 305 F.3d 566, 578 (6th Cir. 2002).

---

[14] In *Hamdi*, the minor child of an illegal alien filed suit, alleging that his mother's removal from this country violated his own rights as a United States citizen. He sought a court order prohibiting her removal. The court held that, although the district court had jurisdiction to consider the question of whether the minor child's constitutional rights would be violated, the court lacked authority to grant the relief requested, because district courts are specifically prohibited by law from reviewing orders of removal. *See* 8 U.S.C. § 1252(g) (Section 1252(g) precludes the federal courts from exercising subject-matter jurisdiction over "any cause or claim by or on behalf of any alien arising from the decision or action by [DHS] to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.").

If a constitutional right is being threatened or impaired, a finding of irreparable injury is mandated.  *Bonnel v. Lorenzo*, 241 F.3d 800, 809 (6th Cir. 2001).  *See, e.g., Hillside Productions, Inc. v. Duchane*, 249 F.Supp.2d 880, 900 (E.D. Mich 2003) (where a plaintiff's procedural due process rights were likely violated, a finding of irreparable harm should follow as a matter of law).  Here, Plaintiff is unable to show a likelihood of success on his constitutional claim and thus also fails to evidence irreparable harm.

### C.      Substantial Harm to Others or the Public

Society has a clear interest in enforcing its immigration statutes.  *Coxcom, Inc. v. Chaffee*, 536 F.3d 101, 112 (1st Cir. 2008) ("[T]he public has an interest in the enforcement of federal statutes."); 11A Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Proc</u>edure, § 2948.4 (2d ed. 2012) ("The public interest may be declared in the form of a statute").  *See supra* at Section III.A.3.

## IV.   CONCLUSION

For these reasons, the Court finds that Petitioner has not met his/her extraordinary burden of establishing by clear and convincing evidence his/her entitlement to a temporary restraining order.  Accordingly, Petitioner's motion for a temporary restraining order (Doc. 2) is **DENIED**.

**IT IS SO ORDERED**.

Date:  5/20/16                                                    *s/ Timothy S. Black*
                                                                         Timothy S. Black
                                                                         United States District Judge