UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ANGELICA LOPEZ-MEJIA *ex rel.*, UNBORN CHILD, | : : : | Case No. 1:16-cv-549 |
| Petitioner, | : | Judge Timothy S. Black |
| vs. | : : | |
| LORETTA E. LYNCH, *et al.*, | : : | |
| Respondents. | : | |

**ORDER GRANTING RESPONDENTS' MOTION TO DISMISS (Doc. 17)**

This civil action is before the Court on Respondents' motion to dismiss (Doc. 17) and Petitioner's responsive memorandum (Docs. 18).[1]

## I. FACTUAL BACKGROUND

For purposes of this motion to dismiss, the Court must: (1) view the complaint in the light most favorable to Petitioner; and (2) take all well-pleaded factual allegations as true. *Tackett v. M&G Polymers*, 561 F.3d 478, 488 (6th Cir. 2009).

Petitioner Baby Lopez-Mejia,[2] through his mother, Angelica Lopez-Mejia, challenges the removal of his father, Juan De Leon-Simon, as a violation of his constitutional rights. Petitioner seeks a declaratory judgment that removal of his father is

---

[1] The Petitioner fails to produce any new and/or different authority other than that which was presented in his motion for a Temporary Restraining Order. (Doc. 2). Accordingly, the Court's position, that Petitioner has not shown a likelihood of success on the merits, has not changed. (Doc. 5 at 8).

[2] Petitioner, a boy, was expected to be born on or about July 30, 2016 in Cincinnati, Ohio. (Doc. 1 at ¶ 2). The Court assumes that Petitioner was born alive in Ohio and is a United States citizen.

contrary to law and that certain immigration-related statutes are unconstitutional as applied to him. (Doc. 1 at PageID 4-5).

De Leon-Simon is a native and citizen of Guatemala who was subject to a reinstated final administrative removal order. (Doc. 17-1 at ¶ 11). His original removal order resulted from being charged under 8 U.S.C. Section 1182(a)(6)(A)(i) as "an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General." (*Id.* at ¶¶ 5-6, Exs. A-B). De Leon-Simon did not contest the removal charges, and was first removed from the United States on July 9, 2009. (*Id.* at ¶¶ 6-7, Exs. B-C).

De Leon-Simon illegally reentered the United States. (Doc. 17-1 at ¶ 8). On or about December 4, 2011, his 2009 order of removal was reinstated (*Id.* at ¶ 9, Ex. D), and he was removed again from the United States on December 22, 2011 (*Id.* at ¶ 10, Ex. E).

At some point in time in the last five years, De Leon-Simon illegally reentered the United States again. (Doc. 17-1 at ¶ 11). On or about February 4, 2016, his 2009 order of removal was reinstated again (*Id.* at ¶ 12, Ex. F), and he was removed a third time from the United States on May 25, 2016 (*Id.* at ¶ 15, Ex. G).

Again, on June 29, 2016, after illegally reentering the United States, his 2009 order of removal was reinstated and he was removed from the United States for a fourth time. (Doc. 17-1 at ¶¶ 16-18, Exs. J-K).

Petitioner requests that the Court declare several sections of the Immigration and Nationality Act ("INA") "as applied to [Petitioner]'s father as violative of his

2

Constitutional rights … or [declare] any other remedy this Court may fashion." (Doc. 1 at PageID 4-5). Petitioner further alleges a violation of the Eighth Amendment because the summary removal of his father "constitutes a form of cruel and unusual punishment." (*Id.* at ¶ 9). Petitioner also alleges that the separation from his father "will deprive him of the continued love, affection, care and financial support of his father" in violation of the Ninth Amendment and "without due process of law." (*Id.* at ¶ 10). Petitioner alleges an equal protection violation because the separation from his father through removal treats him "differently from other U.S. citizen children in the State of Ohio because the best interest of the child is "the standard relating to children in domestic and juvenile law in the State of Ohio." (*Id.* at ¶ 11). Petitioner also alleges that the separation from the father violates the principals of several international treaties of which the United States is a signator. (*Id.* at ¶ 12).

Respondents argue that the Court should dismiss the complaint because: (1) Petitioner has not alleged a cognizable violation of his rights; and (2) even if this Court found that the child's rights were violated, the Court may not intervene in the execution of a final removal order.

## II.     STANDARD OF REVIEW

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) operates to test the sufficiency of the complaint and permits dismissal of a complaint for "failure to state a claim upon which relief can be granted." To show grounds for relief, Fed. R. Civ. P. 8(a)

3

requires that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

While Fed. R. Civ. P. 8 "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). Pleadings offering mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. (citing *Twombly*, 550 U.S. at 555). In fact, in determining a motion to dismiss, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation[.]'" *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265 (1986)). Further, "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Id*.

Accordingly, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678. A claim is plausible where "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief,'" and the case shall be dismissed. *Id*. (*citing* Fed. Rule Civ. P. 8(a)(2)).

## III. ANALYSIS

### A. Constitutional Rights

#### 1. *Unlawful Removal of Parent Alien*

In *Newton v. Immigration and Naturalization Services*, the Sixth Circuit held that the rights of U.S. citizen children are not violated by the removal of their parents. 736 F.2d 336, 342 (6th Cir. 1984). *See also Martial-Emanuel v. Holder*, 523 F. App'x 345, 350 (6th Cir. 2013) ("This Circuit and others have held on numerous occasions that the removal of aliens does not violate either their constitutional rights or the constitutional rights of their U.S. citizen family members.").

The Sixth Circuit explained that "Congress had the power to determine the conditions under which an alien may enter and remain in the United States … even though the conditions may impose a certain amount of hardship upon an alien's wife or children." *Newton*, 736 F.2d at 342 (*quoting Mendez v. Major*, 340 F.2d 128, 131-32 (8th Cir. 1965)). The Court of Appeals stated that "a minor child who is fortuitously born here due to his parents' decision to reside in this country, has not exercised a deliberate decision to make this country his home, and Congress did not give such a child the ability to confer immigration benefits on his parents." *Newton*, 736 F.2d at 342 (quoting *Perdido v. Immigration & Naturalization Serv.*, 420 F.2d 1179, 1181 (5th Cir. 1969)).

Accordingly, as this Court previously held, Petitioner has "failed in the first instance to evidence a constitutional violation." (Doc. 5 at 9).

### 2. *Eighth Amendment*

Petitioner alleges that the removal of his father is cruel and unusual punishment. (Doc. 1 at ¶ 9). However, the prohibition on cruel and unusual punishment only serves to protect those convicted of crimes and circumscribes criminal process, not civil immigration proceedings. *Whitley v. Albers*, 475 U.S. 312, 218 (1986). Petitioner does not allege that he has been convicted of any crime, so his Eighth Amendment rights are not implicated.

### 3. *Ninth Amendment*

Petitioner also alleges a Ninth Amendment violation that his father's removal "will deprive him of the continued love, affection, care and financial support of their father." (Doc. 1 at ¶ 10). The Ninth Amendment ensures that fundamental rights are not excluded from protection simply because they were not expressly enumerated in the Constitution. *Gibson v. Matthews*, 926 F.2d 532, 537 (6th Cir. 1991). The Sixth Circuit has held that the Ninth Amendment "does not confer substantive rights in addition to those conferred by other portions of our governing law," which this Court recognized in rejecting Petitioner's motion for a temporary restraining order. (Doc. 5 at 4). Moreover, the argument that the deprivation of a father's "continued love, affection, care, and financial support" violates the Ninth Amendment has specifically been rejected by the courts. *See, e.g., Cervantes v. Immigration & Naturalization Serv.*, 510 F.2d 879, 91-92 (10th Cir. 1975) (holding that the "incidental impact on aliens' minor children," caused by the operation of the deportation laws, does not violate the children's Ninth

6

Amendment rights); *Papakonstantinou v. Civiletti*, 496 F. Supp. 105, 111 (E.D.N.Y. 1980) ("Nor does the [N]inth [A]mendment prevent the deportation of the alien parents of a citizen child, where the impact on the child, while strong, is nevertheless incidental to the enforcement of the immigration laws.").

Accordingly, the Ninth Amendment provides no basis for a cognizable claim.

### 4. *Procedural and Substantive Due Process Claims*

Next, Petitioner alleges that he has been separated from his father "without due process of law." (Doc. 1 at ¶ 10). However, Petitioner has not alleged any requisite protected liberty or property interest that would entitle him to any procedural due process regarding his father's removal. *See Gunasekera v. Irwin*, 551 F.3d 461, 467 (6th Cir. 2009) (petitioner must establish a life, liberty, or property interest to establish a procedural due process claim); *Martial-Emanuel*, 523 F. App'x at 350 (illegal aliens subject to deportation have no protected property or liberty interest in discretionary relief such as cancellation of removal). Thus, Petitioner has no cognizable right to the notice and meaningful opportunity to be heard provided under the Equal Protection Clause of the Fifth Amendment without a protected liberty or property interest.

In *Martial-Emanuel*, the Sixth Circuit addressed an alien's claim that her removal violated her constitutional rights due to the hardship that would be placed on her husband and children. 523 F. App'x at 347. The Court recognized that due process protects against "governmental encroachment on certain fundamental rights," but the doctrine of

7

substantive due process "does not prevent[] the government from controlling when and how an alien may remain in the United States." *Id.* at 350.

The Sixth Circuit has set forth a two-part analysis for examining substantive due process claims. *Ziss Bros. Constr. Co., Inc. v. City of Independence, Ohio*, 439 F. App'x 467, 471 (6th Cir. 2011). Under this analysis, the Court must first "determine whether the interest at stake is a protected liberty or property interest" and then "consider whether the deprivation of that interest contravened the notions of due process." *Id.* "Substantive due process 'prevents the government from engaging in conduct that shocks the conscience…or interferes with rights implicit in the concept of ordered liberty.'" *United States v. Green*, 654 F.3d 637, 652 (6th Cir. 2001). Moreover, "irrespective of the constitutional sufficiency of the processes afforded, government may not deprive individuals of fundamental rights unless the action is necessary and animated by a compelling purpose." *Bartell v. Lohiser*, 215 F.3d 550, 557-58 (6th Cir. 2000).

Petitioner has not pleaded facts that shock the conscience.[3] Furthermore, the government has a compelling state interest, based on border security and national sovereignty, to enforce its immigration statutes.

---

[3] Petitioner states that "[i]f a court's conscience is not shocked by the separation of children from their non-criminal parents, it had best say so and not hide behind routine. Many monsters have so done." (Doc. 18 at 8). In an effort to maintain and enforce high standards of conduct and preserve the integrity of the judiciary, the Court declines to address counsel's suggestion that the undersigned is a monster. *See* Code of Conduct for United States Judges, Canon 1.

### 5. *Equal Protection*

Petitioner also alleges that his father should not have been removed because this removal resulted in Petitioner being treated differently from other U.S. citizen children in Ohio. (Doc. 1 at ¶ 11). The basis for this contention is that the standard relating to children in domestic and juvenile law in the State of Ohio is that of the best interest of the child, and, thus, his father's removal violates his equal protection rights.

In *Lopez v. Franklin*, the District of Michigan rejected the application of the best interest of the child standard to the removal of U.S. citizens' parents. 427 F. Supp. 345, 349 (D. Mich. 1977). The *Lopez* court concluded that U.S. citizen children would not be deprived of their opportunity to grow up in the United States. *Id.* The Court rejected the parents' arguments that their removal would not be in the "best interest of the children" by turning the argument on its head, stating that if this were the standard applied to all aliens, the government would be unduly interfering in parental decisions to take their children back to their home country under circumstances where the parents were not subject to removal orders. "Following such logic the government would have to forcibly retain custody" of the children if their parents decided to return to their home country. *Id.* (citing *Mendez v. Major*, 340 F.2d 128 (8th Cir. 1965) (concluding that because Congress has the power to determine the conditions under which an alien may enter and stay in the United States, enforcement of the laws does not violate any due process rights of the children)).

Furthermore, in *Hernandez-Lea*, the Sixth Circuit held that the decision to deport an alien who entered the United States illegally did not implicate the equal protection rights of the alien's U.S.-born daughter. *Hernandez-Lea v. Holder*, 563 F. App'x 401, 403 (6th Cir. 2014). "[T]he law on this point is settled: a United States-citizen child's constitutional rights are not implicated by the government's otherwise valid decision to deport that child's parents." *Id.* (citing *Newton*, 736 F.2d at 343). "As we noted in *Newton*, '[w]ere we to hold otherwise, we would create a substantial loophole in the immigration laws, allowing all deportable aliens to remain in this country if they bear children here.'" *Hernandez-Lea*, 563 F. App'x at 403 (quoting *Newton*, 736 F.2d at 343).

### 6. *International Treaties*

Finally, Petitioner alleges that the separation "from his father violates the principles of international treaties to which the United States is a signatory." (Doc. 1 at ¶ 12). However, Petitioner fails to identify the principles, fails to explain the United States' participation in the treaties, and fails to explain how the treaties are the prevailing law in this jurisdiction. In holding that the rights of United States citizen children are not violated with their parents' removal, the First Circuit held that these treaties "do not have the force of domestic law," and even if they did, "the clear intent of Congress [concerning immigration law] would control." *Payne-Barahona v. Gonzales*, 474 F.3d 1, 3 (1st Cir. 2007). Because the treaties are not self-executing, they do not constitute judicially enforceable laws. *Thap v. Mukasey*, 544 F.3d 674, 676 (6th Cir. 2008) (holding that non-self-executing treaties do not constitute judicially enforceable laws). In fact,

10

Judge Rice observed that even if these treaties had the "force of domestic law," "the clear intent of Congress [concerning immigration law] would control." *Saldana v. Holder*, 3:15cv105, Doc. 9 at PageID 62, n. 3 (S.D. Ohio Apr. 2, 2105).

### B. Relief

Even if this Court found that Petitioner's rights were violated, this Court is prohibited from reviewing and vacating a removal order. The Sixth Circuit rejected claims nearly identical to Petitioner's for failure to state a claim because district courts "are prohibited from reviewing and vacating a removal order." *Hamdi v. Napolitano*, 620 F.3d 615, 625 (6th Cir. 2010). In *Hamdi*, the minor child of an alien subject to removal alleged that his mother's removal would violate his own rights as a United States citizen. *Hamdi* sought a court order prohibiting the removal, but the Sixth Circuit dismissed his claims in holding that 8 U.S.C. Section 1252(b)(9) precluded the district court from reviewing and cancelling a parent's order of removal as a result of any finding that the alien's children would be harmed by the removal. *Id.* at 626. As in *Hamdi*, the only substantive relief that will potentially remedy Petitioner's claims was the cancellation of his father's removal, which this Court is barred from granting under 8 U.S.C. Section 1252(b)(9). *Id*.

### IV. CONCLUSION

For these reasons, Respondents' motion to dismiss (Doc. 17) is **GRANTED**. The Clerk shall enter judgment accordingly, whereupon this case is **TERMINATED** on the docket of this Court.

**IT IS SO ORDERED**.

Date: __1/3/17__ _____
Timothy S. Black
United States District Judge